DECISION
This matter is before the Court for decision on Fernando and Nancy Nunes' (hereinafter "Plaintiffs") request for damages related to the unauthorized use of their property by Meadowbrook Development Co., Inc. (hereinafter "Defendant"). For the reasons below, Plaintiffs are entitled to monetary damages. Jurisdiction is pursuant to G.L. 1956 § 8-2-13 and § 8-2-14.
 I Facts and Travel
On May 7, 1999, Plaintiffs purchased property known as 4 Promontory Knoll and designated as "Tax assessor's plat 59 Lot 25 proposed division of land Jason's Peak 11 January 1996" from Defendant. The property sold to Plaintiffs was one of several lots owned by Defendant. Some of these lots abutted Plaintiffs' property.
Defendant claimed that prior to the Plaintiffs' purchase of their lot it had made Plaintiffs aware of its intention to use a portion of Plaintiffs' property to further develop its other lots. Defendant planned on accomplishing such by either utilizing what it believed was an existing *Page 2 
improvement easement, [1] or by extending an existing cul-de-sac over the lot that Plaintiffs were purchasing. Such intentions were reflected in an addendum attached to the purchase and sale agreement signed by Plaintiffs. However, the deed issued to Plaintiffs did not refer to any easements over the lot they purchased.
On February 1, 2002, Plaintiffs filed the within complaint seeking "injunctive and other relief" and alleging that Defendant had violated the warranty covenants contained in Plaintiffs' deed and had trespassed upon Plaintiffs' property. Specifically, the complaint alleged that Defendant had paved a "driveway" across Plaintiffs' property to access abutting properties to the west. Plaintiffs sought, inter alia, "Damages for the wrongful use and occupancy of the Property by Defendant." (Complaint at 6(d).)
This Court, after a non-jury trial, ruled for Defendant, holding that the disputed easement was valid, and was not destroyed under the merger doctrine. On appeal, in an Opinion filed on June 2, 2003, the Supreme Court reversed this Court's Decision, holding that the merger principal applied, and that the disputed easement was extinguished upon Defendant's unity of title to both the burdened parcel and the abutting parcel. Nunes v. Meadowbrook Development Co., Inc., 824 A.2d 421 (R.I. 2003). The Supreme Court also reversed this Court's holding that Defendant had established an easement by necessity, and remanded the matter back to this Court. Id. at 425-426. Plaintiffs now seek damages from Defendant for the unauthorized use of its land and for the costs of restoring the land to its condition when purchased.
This matter was called for trial on January 16, 2008. Plaintiff, Fernando Nunes ("Nunes"), offered an affidavit regarding an alleged oral agreement entered into after June of *Page 3 
2003 whereby Defendant, or its tenant, would pay $100 per week for the continued use of the previously disputed portion of Plaintiffs' land. Nunes also averred in his affidavit that Defendant paved over the disputed gravel "easement" and began actively using it "from about June 1, 2001 through several weeks after the Supreme Court issued its opinion and judgment on June 2, 2003." (Pl.'s affidavit at 3.) Finally, Nunes concluded that, "[i]n my opinion, $100 per week is the fair rental value of the `easement' for the 212 week period from May 7, 1999 through June 2, 2003." Id.
In opposition to the Plaintiffs' submissions, Defendant presented the testimony of Robert Geddes, president of Defendant, who testified that a gravel driveway was installed over the area of the easement sometime during 1996, and that at the time of the conveyance of the property to Plaintiff, the easement was merely a gravel driveway without grass, trees, or other vegetation. Geddes also testified that the parties never entered into any agreement whereby the Defendant would pay $100 per week for use of the easement for the period May 9, 1999 through June 2, 2003. Defendant also presented as a witness Mr. Oliver Perry, an individual with more than twenty-seven years of experience in construction and excavation, who testified that the cost to remove the asphalt, dispose of it, and grade the strip of land would be $1,800. Finally, after the trial, Defendant commissioned the services of William E. Coyle, a certified general appraiser, to appraise the value of the disputed easement for the 212 week period from May 7, 1999 to June 2, 2003, and it attached the appraisal and the affidavit of Coyle as an attachment to its Post-Trial Memorandum of Law. *Page 4 
 II Standard of Review
Rule 52 of the Rhode Island Superior Court Rules of Civil Procedure governs non-jury trials, and provides that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon. . . ." Super. R. Civ. P. 52(a). Accordingly, "the trial justice sits as the trier of fact as well as of law." Hood v. Hawkins, 478 A.2d 181, 184 (R.I. 1984). A trial justice's finding of fact will not be disturbed "unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence or unless the decision fails to do substantial justice between the parties." Opella v. Opella,896 A.2d 714, 718 (R.I. 2006) (quoting Bogosian v. Bederman, 823 A.2d 1117, 1120
(R.I. 2003)). Furthermore, although the trial justice is required to make specific findings of fact, "brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." Donnelly v. Cowsill, 716 A.2d 742, 747
(R.I. 1998)).
 III Analysis
A trespasser is defined as "`one who intentionally and without consent or privilege enters another's property.'" Ferreira v. Strack,652 A.2d 965, 969 (R.I. 1995) (quoting Black's Law Dictionary 1504 (6th ed. 1990)). Further, a trespasser "is liable for an intentional entry although he has acted in good faith, under the mistaken belief, however reasonable, that he is committing no wrong. Thus, he is a trespasser although he believes the land is his own, or that he has the consent of the owner, or the legal privilege of entry. . . ." Prosser and Keeton,The Law of Torts, § 13 at 74-75 (5th ed. 1984). *Page 5 
Plaintiffs assert that "since Meadowbrook was, in effect, a trespasser for the period from the date of the closing on [their] house to the date of the Supreme Court judgment, [they] are entitled to damages for the use and occupancy of the `easement.'" (Pl.'s Memorandum at 12.) In support of their damage claim, as noted above, Plaintiff Fernando Nunes has opined in his affidavit that a fair rental of the use of the land was $100 per week for the 212 week period between the purchase of the home and the Supreme Court decision. Accordingly, Plaintiffs seek $21,200 for the Defendant's unlawful use of their land. Plaintiffs also seek damages for the cost to restore their land through the removal of the pavement, although they provided no testimony or affidavit as to this cost.[2]
Defendant contends that Plaintiffs are not entitled to damages for "use and occupancy" of the disputed easement from May 9, 1999 through June 2, 2003 for three reasons. First, Defendant argues that because Fernando Nunes is not an expert, he is not qualified to offer testimony regarding the value of land. Second, Defendant argues that because no written agreement existed for the use of the easement, the Statute of Frauds would bar recovery of the $100 per week amount. Finally, Defendant argues that because at all times prior to the Supreme Court Opinion, it operated under the Superior Court Decision which ruled that it held a valid easement, it cannot be liable to Plaintiffs. Defendant directs the Court's attention to Smith v. Borden, 17 R.I 220, 21 A. 351
(1891) and argues it is the well-established rule in Rhode Island that "the judgment of a court having jurisdiction of the subject matter and of the person, though erroneous, is not void, but is binding and conclusive upon the parties until it is set aside. . . ." Id. at 221,21 A. at 351. Although Defendant's interpretation of Borden is correct, it's reliance on the application of such to preclude any monetary damages in this case is misplaced. For the *Page 6 
reasons below, the Court finds that Plaintiffs are entitled to damages for Defendant's trespass upon their land.
As to damages in general, "[i]t is well settled that a plaintiff must prove damages to a reasonable degree of certainty." Nat'l Chain Co. v.Campbell, 487 A.2d 132, 134 (R.I. 1985). Speculative testimony regarding damages is not admissible. See Alterio v. Biltmore Constr. Corp.,377 A.2d 237, 240 (R.I. 1977). In contrast, our Supreme Court has also held that "[d]amages do not have to be calculated with mathematical exactitude; all that is required is that they are based on reasonable and probable estimates." Butera v. Boucher, 798 A.2d 340, 350 (R.I. 2002) (citing Rhode Island Turnpike Authority v. Bethlehem SteelCorp., 379 A.2d 344, 358 (R.I. 1997)). Further, a party will not be denied recovery merely because damages are difficult to ascertain, as long as he proves damages with reasonable certainty. Grieco ex rel. Doev. Napolitano, 813 A.2d 994, 998 (R.I. 2003).
Plaintiff's affidavit regarding damages in this matter is of no value and cannot be considered. It is well-established that the value of real estate "must be established, whenever feasible, on the basis of comparable sales cited by an expert witness who has laid a prior foundation consisting of the reasons or factors upon which he has relied in arriving at his opinion." Wordell v. Wordell, 470 A.2d 665, 667 (R.I. 1984) (citing L'Etoile v. Director of Public Works, 89 R.I. 394, 402,153 A.2d 173, 178 (R.I. 1959)); see also Greene v. State Board of PublicRoads, 50 R.I. 489, 492, 149 A. 596, 598 (1930) (rule in Rhode Island has always been that a non-expert cannot testify as to the market value of land). Accordingly, Plaintiff's opinion that the fair rental value of the use of the land is $100 per week is unavailing. However, Defendant has offered an expert opinion on the issue that is acceptable to the Court. *Page 7 
As noted above, William E. Coyle has performed an appraisal of the "easement" for the 212 week period in question and — using the comparable sales method — has determined that the rental value of the easement is $12.50 per week, with a total value for the period of $2,650. This Court finds that the weekly amount of $12.50 is the correct amount of damages in this case. However, Plaintiffs are not entitled to recover for the entire 212 week period. Plaintiff, Fernando Nunes, has stated in his affidavit that Defendant paved the "easement" and began actively using it starting on June 1, 2001. Accordingly, because Plaintiffs have not satisfactorily proven any unauthorized use of their land before this date, the damage calculation must begin at this date. Further, for the reasons below, Plaintiffs cannot recover damages after the date of this Court's earlier decision on July 11, 2002.
In Blue Cross and Blue Shield of Rhode Island v. Nagarian,911 A.2d 706 (R.I. 2006) the Court noted "at common law and under caselaw, `there was no liability . . . for damages suffered by reason of an injunction erroneously granted, unless suit was maliciously brought.'"Id. at 710, (citing Truk Away of Rhode Island v. Macera Bros. ofCranston, Inc., 643 A.2d 811, 816 (R.I. 1994)). Although the situation is reversed in this case, the same principal must apply.
Plaintiffs sought an injunction preventing Defendant from crossing their land. Plaintiffs' request was denied by this Court in its Decision on June 11, 2002 which held that Defendant had an ownership interest in a valid and recorded easement. Defendant relied upon this ruling, later determined erroneous, regarding the injunctive relief. Thus, between the Court's Decision on June 11, 2002 until the Supreme Court decision on June 2, 2003, Defendant was traversing Plaintiff's land under a good faith belief that it had a valid easement allowing such travel. Because this Court, albeit erroneously, held that Defendant had a valid easement over Plaintiffs' property, Defendant cannot be held liable for relying upon that ruling. Accordingly, the Court *Page 8 
finds that Plaintiffs are entitled to recover damages only for the 58 week time period between June 1, 2001 and the July 11, 2002 Superior Court Decision, at the rate noted above.
Finally, Defendant also has asserted that it should not be liable for restoration of the "easement," again relying on the argument that it was operating under the erroneously granted judgment. Defendant's reliance on such reasoning, pertaining to the costs of restoration, is misplaced. When Defendant altered the condition of the Plaintiffs' land by paving over it, Defendant was proceeding under its own erroneous belief that it had an ownership interest in an easement over the property. This Court had not yet issued its decision determining that Defendant had a valid easement. Therefore, Defendant is liable to Plaintiffs for the cost of restoring the land to the condition it was in at Plaintiffs' purchase. As noted above, Defendant's expert testified that the cost of removal of the pavement and regarding of the land was $1,800. Accordingly, the Court finds that the Plaintiffs are also entitled to damages for restoration in that amount.
 IV Conclusion
Defendant is guilty of trespass upon Plaintiffs' property and is liable for damages. Defendant must pay for the unauthorized use of Plaintiffs' land and the cost of restoring it to the condition that it was in upon Plaintiffs' purchase. Accordingly, Defendant must remit to Plaintiffs as damages an amount totaling $2,525, [3] plus interest. Counsel shall prepare an appropriate order consistent with this Decision.
[1] The basis for Defendant's belief that an easement existed over the lot purchased by Plaintiffs related to a series of transactions that preceded the conveyance of lot No. 25 to Plaintiffs. In summary, after Defendant had acquired lot No. 25, it granted an abutting landowner an easement over the lot and recorded a deed reflecting such. Some time later the landowner conveyed the abutting property to Defendant, subject to the easement over lot No. 25.
[2] Plaintiffs also argued in their memorandum that they were entitled to attorney's fees, but that issue was disposed of by means of summary judgment.
[3] 58 weeks at $12.50 per week, plus $1,800. *Page 1